**Arthur J. HUMPHREYS**

v.

**UNITED STATES.**

**C.D. 2112; Protests Nos. 274866-K, 297915-K, and 291269-K.**

United States Customs Court, First Division.

Sept. 4, 1959.

Lawrence & Tuttle, San Francisco, Cal. (Barnes, Richardson & Colburn, New York City, by George R. Tuttle, Jr., George R. Tuttle, Sr., San Francisco, Cal., and Edward N. Glad, New York City, of counsel), for plaintiff.

George Cochran Doub, Asst. Atty. Gen., Mollie Strum, Murray Sklaroff, New York City, and Margaret M. Kiley, Norwalk, Conn., trial attorneys, for defendant.

Before OLIVER, MOLLISON, and WILSON, Judges.

MOLLISON, Judge.

The plaintiff in these cases imported into the United States a commodity described on the invoices as "Liquified Petroleum Gas" upon which duty was assessed at the rate of $\frac{1}{4}$ cent per gallon under the provision in section 4521(1),

260

Internal Revenue Code of 1954, 26 U.S.C.A. § 4521(1), as modified by the Presidential proclamation relating to the General Agreement on Tariffs and Trade, T.D. 51802, for "all liquid derivatives of crude petroleum, except lubricating oil and gasoline or other motor fuel."

The protest in each case claims that the merchandise consists of propane, butane, and similar *gases,* and that as such gases they are not subject to the tax on *liquid* derivatives of crude petroleum provided for in section 4521, supra.

There appears to be no dispute but that at ordinary temperatures and at atmospheric pressure propane, butane, and mixtures of the two are in a gaseous state, and that when such commodities are compressed under certain conditions they pass from the gaseous form into the liquid form. The merchandise at bar was imported in pressurized tank cars and was approximately 90 percent in a liquid state and approximately 10 percent in a gaseous state.

It is the contention of the plaintiff that the gases were compressed into liquid state solely as a means of facilitating and economizing transportation; that they are not liquids within the common meaning of the term "liquid derivatives of crude petroleum"; and that Congress did not intend them to be classified with the other products enumerated in section 4521, supra.

The defendant's position is that it is the condition of the merchandise at the time of its importation which governs its classification; that, as imported, the propane, butane, and mixture at bar were liquids and come within the wording of the statute, which it contends, is unambiguous.

According to the record, propane and butane may be obtained from several sources. They may be obtained directly from the ground, apparently in association with natural gas; they may be separated at the refinery from crude petroleum; and they may be removed from natural gasoline by evaporation. Although the record indicates that when butane is taken from the ground under pressure it may be to some degree in a liquid state, it appears that both propane and butane are normally obtained and known as gases.

The gases may be distributed as gases in pipelines, in which case they appear to be sold by the cubic foot or on a therm basis, one therm equaling 1,000 British thermal units. As it was in the case of the merchandise at bar, the gases may also be compressed by standard types of industrial compressors, and at certain pressures and temperatures they become liquid and may be stored and transported in various types of containers, such as pressurized tank cars, cylinders, or other pressure vessels. In such cases, they are sold by the gallon, or liquid measure.

The liquefied gases at bar were sold for use in a test program for application as a motor fuel, and for use in industrial and domestic heating applications. In some of the latter applications, the merchandise was distributed to the ultimate consumer in the form of a gas, while in others, particularly to individual domestic users, it was distributed in pressurized containers in liquid form.

Before it can be used, however, it appears that the liquid is transformed into the gaseous state by reducing the pressure, and that it is used as a gas, rather than as a liquid.

Plaintiff urges that the fact that both in origin and in use the liquefied petroleum gases at bar are in gaseous form demonstrates that the conversion of the original gases into liquid form was done solely for facility and convenience in transportation and did not affect their essential character and nature as gases. Plaintiff cites a number of decisions of this and other courts as holding that processes to which certain commodities had been subjected prior to importation for the purpose of effectuating safety, facility, or economy in transportation, and which processes did not alter the essential characteristics of the commodities, were not considered to have taken those commodities out of the tariff classi-

fication to which the original commodities belonged.

Among the cited cases are Fleming-Joffe, Ltd. v. United States, 25 Cust.Ct. 56, C.D. 1263 (treatment to preserve raw snakeskins and permit their safe transportation, but which was insufficient to convert them into leather), J. T. Williams & Son v. United States, 5 Treas.Dec. 584, T.D. 23874, and Dieckmann v. United States, 41 Treas.Dec. 505, Abstract 44689 (walnut and cedar logs sawed in such a manner as to facilitate transportation but held not sufficient to convert them from logs into sawed lumber or timber), and United States v. Aetna Explosives Co., 256 U.S. 402, 41 S.Ct. 513, 65 L.Ed. 1013 (addition of sulphuric acid to nitric acid, solely for the purpose of rendering the transportation of the nitric acid safe, but which did not result is a usable mixture of acids).

Counsel for the defendant, in the brief filed in its behalf, has pointed out that in each of the cases cited, the ruling did not rest upon any principle or rule that the results of processes effectuated solely for safety, facility, or economy in transportation were to be disregarded in determining the tariff classification of imported merchandise, but, rather, upon a finding in each case that the processes did not actually result in the conversion of the original commodity into another commodity having a tariff classification separate and distinct from that of the original commodity.

We think that counsel for the defendant has correctly stated the *ratio decidendi* of the cited cases, as well as the cases of United States v. Rockhill & Vietor, 10 Ct.Cust.App. 112, T.D. 38374, and Bush & Co., Inc., v. United States, 11 Ct.Cust. App. 246, T.D. 39076, also cited by counsel for the plaintiff. In the latter cases, certain oils hardened by a hydrogenation process were held, notwithstanding a change in form and in some properties, to be properly classifiable under the tariff provisions applicable to the original oils. Moreover, in those cases the competition between tariff provisions was not comparable to that in the case at bar.

Counsel for the parties differ in their concepts of the meaning to be given to the term "all liquid derivatives of crude petroleum," as found in section 4521, supra. Counsel for the defendant urges that the commodities at bar, which it is unquestioned are derivatives of crude petroleum, are liquids in their imported form, and that the language of the statute is clear and unambiguous as covering all derivatives of crude petroleum which are in the liquid state.

From a consideration of the nature of the products associated in section 4521 and in trade agreement modifications thereof with the language "all liquid derivatives of crude petroleum," counsel for the plaintiff suggests that that language was intended to cover only products which exist in a liquid state at atmospheric pressure. Thus, counsel points out that fuel oil derived from petroleum, gas oil derived from petroleum, lubricating oil, gasoline, or other motor fuel, topped crude petroleum, and mineral oil of medicinal grade are all liquids at normal atmospheric pressure and that it was products of such nature that Congress intended to cover by the use of the term "all liquid derivatives of crude petroleum."

Counsel for the plaintiff further suggests that, even when liquefied by being compressed, gases, such as propane, butane, and mixtures thereof, retain their essential identities as gases and are commonly so regarded.

We are of the opinion that the divergent views of counsel point up the fact, apparent to us, that the term "all liquid derivatives of crude petroleum" is ambiguous in that it is susceptible of more than one logical meaning. On the one hand, as urged by counsel for the defendant, the words may mean all derivatives of crude petroleum which, in their imported state, are liquids. On the other, as suggested by counsel for the plaintiff, they may mean all derivatives of crude petroleum which are commonly known as liquid derivatives as opposed to those known as gaseous derivatives or as solid derivatives of crude petroleum.

We are further of the opinion that in view of the language of the context in which the term appears the more logical and natural meaning to be ascribed to the term is the latter. We are not unmindful of the general rule cited by counsel for the defendant and expressed in the case of Worthington v. Robbins, 139 U.S. 337, 11 S.Ct. 581, 583, 35 L.Ed. 181, that—

"* * * In order to produce uniformity in the imposition of duties, the dutiable classification of articles imported must be ascertained by an examination of the imported article itself, in the condition in which it is imported."

This rule, however, is one of classification, that is, of the application of known or settled tariff meanings to imported articles. It is not a rule for determining the meaning of the statute, which is what we are here concerned with.

■ It is a matter of common knowledge, we think, that as crude petroleum is subjected to various separating and refining processes, its derivatives are obtained as gases, liquids, or solids, and that these derivatives are commonly identified not only by name but by a form or state associated with that name. Thus, propane is identified as a gas, kerosene as a liquid, paraffin as a solid. It is unquestionably possible to change the form or state of many of the derivatives by changing the temperature and/or pressure under which they are normally found. As in the case at bar, propane, normally a gas, may be changed into a liquid by compression. Paraffin, normally a solid, may be changed into a liquid by heating, and doubtless changes may be effected in other petroleum derivatives by chemical or other treatment.

Section 4521 of the Internal Revenue Code of 1954, as codified, read as follows:

"§ 4521. Imposition of tax

"In addition to any other tax or duty imposed by law, there is hereby imposed upon the following articles imported into the United States, unless treaty provisions of the United States otherwise provide, a tax at the rates specified. For the purposes of such tax, the term 'United States' includes Puerto Rico.

"(1) Crude petroleum, fuel, and gasoline.—Crude petroleum, fuel oil derived from petroleum, gas oil derived from petroleum, and all liquid derivatives of crude petroleum, except lubricating oil, and gasoline or other motor fuel, one-half cent per gallon.

"(2) Gasoline or other motor fuel.—Gasoline or other motor fuel, 2½ cents per gallon.

"(3) Lubricating oil.—Lubricating oil, 4 cents per gallon.

"(4) Paraffin and other wax products.—Paraffin and other petroleum wax products, 1 cent per pound."

[Note—the foregoing rates were reduced by virtue of trade agreements in effect at the time the merchandise at bar was imported.]

We are of the opinion that the language of section 4521 indicates a congressional intent to tax crude petroleum and all of that class of derivatives thereof which are liquid derivatives. Subsection (1) names the parent product, crude petroleum, and then names two derivatives of that product, to wit, fuel oil and gas oil, both of which are commonly known as liquids. This is followed by the words of general description "and all liquid derivatives of crude petroleum," to which two exceptions are named— gasoline or other motor fuel and lubricating oils—both of which also are commonly known as liquids. In other words, both in the particular derivatives named and in the named exceptions to the language of general description there is strong indication that Congress had in mind derivatives which are commonly known as liquids.

We think that on its face the language used bespeaks an intention that the general words "and all liquid derivatives of crude petroleum" should refer to articles

of the same nature as the liquid derivatives named, and even if this intention were not considered to be so apparent, application to the statutory language of the rules of construction of *noscitur a sociis* and *ejusdem generis* would require that result.

Consequently, in our view, Congress used the term "all liquid derivatives of crude petroleum" as the equivalent of naming all those derivatives of crude petroleum which, like fuel oil, gas oil, lubricating oils, and gasoline or other motor fuel, are commonly known as liquids, and did not intend it to refer only to the state in which any petroleum derivative might be found upon importation. Such a meaning as the latter would make the same product dutiable or non-dutiable in accordance with the form or state in which it was imported. There is nothing discernible in the language used which would tend to support that meaning, whereas, on the contrary, it would seem that the language used by Congress indicates it was taxing a definite class of derivatives of crude petroleum according to the essential nature of that class of derivatives, rather than according to its form or state upon importation.

Our view is corroborated by an examination of the legislative history of the term. It appears that section 4521 of the Internal Revenue Code of 1954 is a re-codification of essentially similar provisions contained in sections 3420 and 3422 of the Internal Revenue Code of 1939, 26 U.S.C.A. §§ 3420, 3422, which, in turn, were derived from section 601 (a), (b), and (c) (4) of the Revenue Act of 1932 (47 Stat. 260). As introduced and passed by the House of Representatives, the bill (H.R. 10236, 72d Congress) provided for an import tax on:

> "Crude petroleum, fuel oil derived from petroleum, gas oil derived from petroleum and gasoline."

of 1 cent per gallon.

During the hearings before the Committee on Finance of the United States Senate, it was pointed out by the representative of an interested party that the failure to tax other derivatives of crude petroleum than those named would permit an evasion of the tax, inasmuch as other derivatives could be imported free of tax and easily converted into gasoline or motor fuel.

According to the record of the hearings before the Senate Finance Committee ("Revenue Act of 1932: Hearings Before The Committee on Finance, United States Senate, Seventy-second Congress, First Session, on H.R. 10236 * * * April 6 to April 21, 1932 * * * U.S. Government Printing Office, Washington: 1932," pp. 523–524), an amendment was suggested by Senator Gore, a member of the Committee, to meet this situation, among other things. The amendment, which was in the form of a substitute for the House provision, was read into the record as follows:

> "(4) Crude petroleum fuel oil derived from petroleum, gas oil derived from petroleum and all liquid derivatives of crude petroleum, except lubricating oil and gasoline or other motor fuel, 1 cent a gallon; on gasoline or other motor fuel, 3 cents a gallon; on lubricating oil, 4 cents a gallon; on paraffin and other petroleum wax products, 1 cent a pound; on natural asphalt and asphalt and bitumen derived from petroleum, 10 cents a hundred pounds; but the tax on the articles described in this paragraph shall apply only with respect to the importation of such articles."

It should be noted that the amendment was not read into the record by Senator Gore, but by an interested party appearing as a witness before the Committee, but it appears from the record that Senator Gore was present at the time. The witness who read the amendment into the record gave the following explanation:

> "Mr. Franklin. * * *
>
> "Now in explaining the reasons for this suggested amendment of Senator Gore, there has been added

into it 'and all liquid derivatives of crude petroleum.' Gentlemen, that is for the purpose of preventing the evasion of the tax as passed by the House. If that provision is not included in this amendment it would be very easy for the importers to evade the tax that is levied, because there is such a slight difference in the scale, in the gravities of these different products of crude petroleum that it would be easy to ship a product in here and call it kerosene, and after it got here subject it to a very slight refining process and sell it as motor fuel. So it is necessary to include in here 'and all liquid derivatives of crude petroleum.'

"Senator George. What are some of the light products?

"Mr. Franklin. Some of the products, these light products which would be covered by the bill as written at present, Senator George, are benzine, kerosene—

"Senator Connally. Naphtha.

"Mr. Franklin (continuing). Naphtha, and there is a variety of others listed by the Department of Commerce under the head of light distillates. This clause that I have here would include them all and it would be a fair and equal tax."

It appears that the bill was reported to the Senate with substantially the foregoing amendment (Senate Report 665, 72d Cong., 1st sess.). There were changes in rates, but no significant changes in language. The bill was passed by the Senate in the form reported, and the amendment was given number 137. In the committee of conference, the House Committee recommended that the House recede from its disagreement with amendment No. 137 with an amendment striking out the tax on asphalt and bitumen (House report No. 1492, 72d Cong., 1st sess.), and the bill as subsequently passed by both houses contained unchanged the language with which we are here concerned.

It thus appears that the legislative history of the provision shows that Congress was seeking to impose a tax upon crude petroleum and certain named derivatives thereof, to wit, fuel oil, gas oil, gasoline, and lubricating oil, all of which are commonly known as liquids. It further appears that the term "and all liquid derivatives of crude petroleum" was inserted to cover *similar* derivatives of crude petroleum not named in the bill (and, hence, not taxable as imports thereunder), but which could subsequently be refined into the liquid products named in the bill and on which an import tax was imposed.

We think the legislative history of the term confirms the view urged by counsel for the plaintiff and adopted by this court as to the meaning of the term in question. Under that view, the liquefied petroleum gases at bar are not taxable under the language of section 4521, supra.

Judgment will, therefore, issue sustaining the claim made in each of the protests for entry free of the said tax or duty.