**AMERICAN BITUMULS & ASPHALT CO.**

v.

**UNITED STATES.**

C.D. 2188; Protest No. 320171–K.

United States Court of Customs, First Division.

June 27, 1960.

Sharretts, Paley & Carter, New York City) Joseph F. Donohue, New York City, of counsel), for plaintiff.

George Cochran Doub, Asst. Atty. Gen., Richard E. FitzGibbon and Murray Sklaroff, Trial Attys., New York City, for defendant.

Before OLIVER, MOLLISON and WILSON, Judges.

MOLLISON, Chief Judge.

The merchandise the subject of this protest is so-called cutback asphalt. There does not seem to be any question but that it consists of solid asphalt mixed with 20 per centum of a kerosene-like distillate of petroleum, so that the resultant product, in its condition as imported, is in a liquid state.

The cutback asphalt in issue was admitted to free entry under the provision in paragraph 1710, Tariff Act of 1930, 19 U.S.C.A. § 1201, par. 1710, for—

> "Limestone-rock asphalt; asphaltum and bitumen,"

but a tax or duty at the rate of ¼ cent per gallon was assessed and collected under the provision in section 4521(1), Internal Revenue Code of 1954, 26 U.S.C.A. § 4521(1), as modified by T.D. 51802, imposing such tax or duty on—

> " * * * all liquid derivatives of crude petroleum, [except certain derivatives not here involved]."

Plaintiff contends that the merchandise at bar is not a liquid derivative of petroleum within the meaning of the Internal Revenue Code provision under which tax or duty was imposed.

The facts of the production and use of the cutback asphalt at bar are not in dispute, and, briefly, are that a certain crude oil, known as Boscan crude, of high asphaltic content, is subjected to distilling operations by which the lighter fractions, such as naphtha and kerosene, are removed. The residue which is left is asphalt which, at normal temperatures, is a solid.

In order to transport such asphalt, it must either be heated to 300 degrees Fahrenheit, which changes it to a liquid, which can be pumped (and maintained at that temperature either by insulation or the use of heating devices), or it must be mixed with a suitable solvent, forming cutback asphalt, such as that at bar.

In the latter case, the mixing is mechanical and does not effect any chemical reaction. Cutback asphalt is used as a binder of the aggregate, or mixture of stones and gravel, used in road building, and, in such use, the cutback asphalt and the aggregate are combined by mechanical means and then spread or laid down on the road. For various reasons, such as the time it takes to get the material from the place where it is mixed to the place where it is used, it appears to be desirable to control the rate at which the solvent in the cutback asphalt evaporates after it is mixed with the aggregate. When the solvent evaporates, the asphalt hardens into a solid again and binds the aggregate.

This controlled or "curing" rate is determined by the type and amount of solvent that is mixed with the solid asphalt at the time the cutback asphalt is prepared. A lighter or naphtha-like solvent produces a rapid curing asphalt; a medium or kerosene-like solvent produces a medium curing asphalt; and a heavy, or fuel oil-like solvent, produces a slow curing asphalt. It appears that there are 6 grades of cutback asphalts in each type of curing, making 18 grades of cutback asphalt, which are ordered by the users according to the type and grade. The merchandise at bar was prepared with the use of solid asphalt and 20 per centum by volume of a kerosene-like

solvent, making a medium curing, grade 4, cutback asphalt.

In support of its contention, plaintiff has cited various authorities for principles of the tariff classification of merchandise which it argues are applicable to the situation at bar. These are United States v. Aetna Explosives Co., 256 U.S. 402, 41 S.Ct. 513, 65 L.Ed. 1013, relating to the effect upon tariff classification of the addition to or mixture with imported merchandise of preparations to facilitate transportation; United States v. Rockhill & Vietor et al., 10 Ct.Cust. App. 112, T.D. 38374, relating to the effect of changes in form and properties, without change in essential characteristics, of merchandise covered by tariff act designations; and Arthur J. Humphreys v. United States, 43 Cust.Ct. 103, C.D. 2112, relating to the construction of the language "all liquid derivatives of crude petroleum" in section 4521, supra.

Generally speaking, all of the foregoing cases have running through them the principle that where additions to, or changes in, an imported commodity prior to importation do not convert it into a different commodity having a tariff classification separate and distinct from that of the original commodity, such additions or changes do not take the original commodity out of the classification applicable thereto.

Because it involves the construction of the precise language of the statute here involved, however, we think the decision in the Humphreys case is most apt and controlling of our decision herein.

In that case, a mixture of propane and butane gases, derived from crude petroleum, was, prior to importation, compressed and thereby liquefied. It was subjected to tax or duty under section 4521, supra, as a liquid derivative of crude petroleum.

The contentions of the parties in that case were the same as those of the parties in this case, the plaintiff contending that the term "all liquid derivatives of crude petroleum" referred only to those derivatives which are commonly known as liquid derivatives, as opposed to gaseous derivatives or solid derivatives of crude petroleum, while the defendant contended that the term referred to all derivatives of crude petroleum which, in their imported state, are liquids.

In determining the issue in favor of the plaintiff's claim, we there pointed out that the meaning contended for by the plaintiff was not only the logical and natural meaning of the term, but also was the meaning which comported with principles of statutory construction and with the legislative history of the term.

Under that meaning, the thing which was derived from crude petroleum in the Humphreys case, supra, was a gas or gases, butane and propane, and commonly so known. Here, the principal ingredient (80 per centum by volume) of the imported merchandise, and the commodity which gave the imported merchandise its name and character, was asphalt, which is commonly known as a solid derivative of crude petroleum.

Webster's New International Dictionary, second edition, 1945, defines it as—

"A brown to black, solid bituminous substance occurring native at the Dead Sea, in Trinidad, and elsewhere (natural or native asphalt), and also obtained as a residue from certain petroleums, coal tar, lignite tar, etc. (artificial asphalt); mineral pitch. * * *"

Counsel for the defendant seeks to distinguish the situation in the Humphreys case from that in the case at bar by pointing out that while the imported mixture of gases in the Humphreys case was normally a gas, the imported merchandise in this case, cutback asphalt, is normally a liquid. Counsel further argues that the "character [of the imported merchandise] is determined by the amount and type of solvent used."

We are of the opinion that counsel's argument is without merit. Cutback asphalt is not itself a direct derivative of crude petroleum. It is a physical mixture of two derivatives of petroleum, one a solid and the other a liquid. One of

those derivatives, i. e., asphalt, gives the merchandise its name, cutback *asphalt*, and its character.

According to Webster, *op. cit.*, "character," in the sense in which it is here used, is—

"II. A trait or sum of traits conferring distinctiveness. 3. An attribute, quality, or property; esp. a trait or characteristic which serves as an index to the essential or intrinsic nature of a thing or person."

There is no question but that the attributes, qualities, or properties of the imported merchandise which distinguish cutback asphalt from other things and show its essential or intrinsic nature are those which it possesses because of its asphalt content. These are the attributes, qualities, or properties which are sought for in use, while the other derivative of crude petroleum used in the making of cutback asphalt, the solvent, is merely the medium or vehicle used for transporting and applying the asphalt, and disappears in use. The *character* of the imported product is that of asphalt; its more or less temporary *state* is that of a liquid.

Consequently, if the imported merchandise may be said to be any kind of derivative of crude petroleum at all, it is a solid derivative of crude petroleum so treated or processed that it has been reduced to the liquid state; in other words, it is a liquefied petroleum solid in the same sense that the gases involved in the Humphreys case were liquefied petroleum gases.

As we have said, the issue in this case is essentially the same as that which was involved in the Humphreys case, i. e., whether the term "all liquid derivatives of crude petroleum" refers to a class (or character) of derivatives or to a state of derivatives of crude petroleum.

In our discussion of the law applicable to the liquefied petroleum gases involved in the Humphreys case, supra, we noted that the provision in section 4521, supra, containing the term under consideration,

"and all liquid derivatives of crude petroleum," read as follows:

"Crude petroleum, fuel oil derived from petroleum, gas oil derived from petroleum, and all liquid derivatives of crude petroleum, except lubricating oil and gasoline or other motor fuel * * *."

We also noted that the derivatives of crude petroleum which were set forth as part of the series of things specifically named before the general language "and all liquid derivatives of crude petroleum" (to wit, fuel oil and gas oil derived from petroleum) as well as the liquid derivatives excepted from the provisions (to wit, lubricating oil, and gasoline or other motor fuel), were such derivatives as were commonly known as liquids, and we concluded that—

"* * * on its face the language used bespeaks an intention that the general words "and all liquid derivatives of crude petroleum" should refer to articles of the same nature as the liquid derivatives named * * *."

We found that such conclusion was supported by application of rules of statutory construction and by the legislative history of the provision, which we set forth in our opinion in the Humphreys case.

We are of the opinion that the reasoning set forth in our opinion in the Humphreys case is applicable to and dispositive of the issue in this case. From that reasoning, we concluded that the term "all liquid derivatives of crude petroleum," as used in section 4521, supra, refers to all derivatives of crude petroleum which are commonly known as liquid derivatives as opposed to those known as gaseous derivatives or solid derivatives. Asphalt, being commonly known as a solid derivative of crude petroleum, is not classifiable under that term, even when reduced to a liquid state by being mixed with a solvent.

The protest in the case at bar, as originally filed, claimed that the merchandise "is not subject to any duties or taxes

under the provision of the Internal Revenue Code." It was subsequently amended so as to claim alternatively that "the solvent is taxable under 26 U.S.C. Sec. 4521 at ¼ cent per gallon and that the asphalt content is free of duty."

Neither claim has been abandoned, and plaintiff thus raises the issue as to whether the tax provided for in section 4521, supra, should be imposed upon the kerosene-like solvent which formed a part of the imported cutback asphalt.

Counsel for neither of the parties have specifically taken up this issue on the briefs filed in their behalf, and we are unable to perceive any basis upon which the imported merchandise, cutback asphalt, should be treated, for the purpose of assessing the tax or duty imposed under section 4521, supra, as two separate tariff entities.

The language of section 4521 does not indicate that the taxes there imposed shall be collected on the portion or quantity of an imported article which consists of any of the articles named therein. Whenever Congress has intended that result, it has used language appropriate for that purpose. Compare, in this regard, the provisions of section 4581 of the same Internal Revenue Code, 26 U.S.C.A. § 4581, imposing taxes upon certain imported articles by reason of their content of taxable products.

There is no suggestion, finding, or proof that any of the administrative provisions of the tariff laws relating to commingled goods or that any principles of tariff construction relating to physical entities separable for tariff purposes (e. g., under the doctrine of entireties) are here applicable so as to make the components or parts of the cutback asphalt subject to separate or individual tariff treatment.

It would appear that the tax imposed under the provision for "all liquid derivatives of crude petroleum" is imposed only upon such imported *articles* (and not upon parts of imported articles) as respond to that designation. The article at bar, cutback asphalt, as we have held, is not such an article.

The protest claim for entry free of tax or duty under section 4521 of the Internal Revenue Code of 1954 is sustained and judgment will issue accordingly.