**C.J. VAN HOUTEN & ZOON, Plaintiff,**

**v.**

**UNITED STATES, Defendant.**

**Court No. 86-1-00036.**

United States Court of International Trade.

June 1, 1987.

Harris & Berg, R. Christian Berg, Washington, D.C. and Marynell DeVaughn, Omaha, Neb., for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, New York City, Florence M. Peterson, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

TSOUCALAS, Judge:

The only issue in this action involves the proper classification of sweetened molten

chocolate imported by plaintiff from Canada. Plaintiff alleges that the merchandise should be classified under item 156.25, TSUS, as "Chocolate: ... Sweetened: In bars or blocks weighing 10 pounds or more each ...", and contests the classification by Customs under item 156.30 as "Chocolate: ... Sweetened: ... In any other form...." Plaintiff and defendant have previously submitted a Joint Stipulation of Facts and Issues, and the matter is now before the Court on cross-motions for summary judgment.

Briefly summarized, the stipulation by the parties reflects the following undisputed facts: (1) The terms "liquid" and "molten" are synonymous and interchangeable; the terms "solid" and "hardened" are synonymous and interchangeable. (2) The imported chocolate is not solid; when at temperatures at or above 85–90° F, sweetened chocolate is liquid or molten; sweetened chocolate at temperatures below 80° F is neither liquid nor molten. Only very slight changes in density and volume occur by cooling the chocolate to a solid state. The essential chemical characteristics of the chocolate remain the same whether it is in a liquid or solid state. (3) The imported chocolate, in liquid state, is pumped from holding tanks at the place of manufacture in Canada, into temperature-controlled tank trucks, which transport the chocolate at no less than 95° F, to plaintiff's factory in Vermont. The imported merchandise consists of two tank truck shipments of 44,774 and 43,805 pounds of chocolate, respectively. (4) This technology has been in use since about 1950, which is a more efficient, economical, and convenient method of transporting chocolate than in bars or blocks. (5) After importation, the liquid chocolate is pumped into heated holding tanks at plaintiff's factory. The chocolate in this molten condition is not suitable for direct retail consumption. (6) The merchandise was not sold in its condition as imported, but was processed by plaintiff into finished chocolate products, for conversion to bakery bells, flakes, or chips, for further resale at commercial, industrial and wholesale levels; and appropriately packaged for sale to bakeries, dairies, and retailers. (7) Plaintiff and other importers do import into the United States, chocolate in bars or blocks, which is an article of commerce.

It is plaintiff's contention that the "bars or blocks" language in item 156.25 is flexible enough to include chocolate in molten form. Plaintiff further alleges that Congress intended this provision to cover commercial imports of chocolate;[1] and the language employed merely reflects how this commodity was transported in 1929, when this provision was first enacted. Defendant argues that the statute is unambiguous in that item 156.25 clearly contemplates solid bars or blocks, and resort to legislative history is inappropriate. The issues are whether chocolate in liquid form is included within the definition of "bars" or "blocks"; and whether Congress intended to use that language to distinguish between commercial shipments of chocolate for further manufacturing and retail consumption of chocolate.

## DISCUSSION

Initially, the Court must determine whether the definitional aspects of "bars" and "blocks" encompass liquid or molten material. The common meaning of the words apply unless Congress clearly indicated that a commercial designation is to prevail. *Schott Optical Glass, Inc. v. United States*, 67 CCPA 32, 34, C.A.D. 1239, 612 F.2d 1283, 1285 (1979). In ascertaining the common meaning, which is a question of law, the Court may consult lexicons and other reliable sources of information. *Id.*

---

1. The basis for denying plaintiff's protest was Customs' decision in T.D. 84–15, 18 Cust.Bull. 43 (January 12, 1984), rejecting a proposal to classify the merchandise in issue here under item 156.25, TSUS. Customs concluded that the common meaning of "bars" and "blocks" intend a solid mass; there was no clear intent to have a commercial or trade meaning prevail; and even an analysis of legislative history did not support the proposed classification.

*Webster's New International Dictionary* (2d Ed.1948), supplies these relevant defintions: [2]

**bar:** 1. A piece of wood, metal, or other material, long in proportion to its breadth and thickness, and having, in general, considerable rigidity, such as one used for a lever, support, hindrance, obstruction, fastening, ... etc.;

\* \* \* \* \* \*

3. A piece of some substance, of indefinite size, shaped so as to be long in proportion to its breadth and thickness; also, the quantity contained in such a piece; as, a *bar* of gold, or of lead; a *bar* of soap.

**block:** I. Of a solid piece of some material, or the like:

\* \* \* \* \* \*

4. A mold or form upon which articles are shaped or displayed;

Similar meanings are embodied in *Webster's Third New International Dictionary*, (1968 and 1981):

**bar** 1c: a solid piece or block of some material usu. rectangular and considerably longer than it is wide <a — of gold>.

d: a piece (as of wood or metal) longer than it is wide and usu. having considerable rigidity that is used as a lever, handle, support, or division maker ...

**block** 1. a compact usu. solid piece of substantial material (as wood, stone, or metal) ...; as

\* \* \* \* \* \*

b: a mold or form upon which articles or materials are shaped or displayed ...

Furthermore, two other sources indicate that a *bar* and a *block* are a solid substance or material. *Britannica World Language Edition of Funk and Wagnalls Standard Dictionary*, Vol. 1 (1963); *The New Century Dictionary*, Vol 1 (1946).

■ While the meaning of the words in the tariff provisions will be determined as of the nineteen sixties, at the time the TSUS was enacted, *Kuehne & Nagel, Inc. v. United States*, 10 CIT ——, Slip. Op. 86–138 at 3 (December 22, 1986) [Available on WESTLAW; DCT database], the prevalent concept, which has not changed, is one of a solid mass. Yet, plaintiff argues that these terms do not unequivocally exclude molten material since some definitions state that a block is *usually* a solid, and that a bar need only be hardened material when it is used as an impediment or hindrance. The Court recognizes the numerous definitions for "bar" and "block", and the use of these words to denote something other than the form of a substance, such as: a block as a unit of votes, an obstacle, or a unit of building material; and a bar to an action, or the part of a steel grating. However, when focusing on a bar or block of material, plaintiff's rationale ignores that not one reference material referred to by this Court or by plaintiff gave an example of a bar or block of a liquid substance. Each illustration was of a bar or block of some solid material. Therefore, as used in item 156.25, these terms describe solid chocolate.

■ Although the nuances between viscous solids and typical solids might produce greater difficulty in classification, it has not been claimed that the merchandise in question is a viscous solid. Rather, it has been stipulated that it is a liquid. Since it is a well settled axiom that classification is determined based on the condition of the article as imported, *United States v. Citroen*, 223 U.S. 407, 414–15, 32 S.Ct. 259, 259–60, 56 L.Ed. 486 (1912), the chocolate here in issue does not comport to the definitions of bars or blocks. Furthermore, the impression of some solid substance seems paramount to any definitive shape requirement, which permits Customs to classify the solid 40,000 pound tank loads of chocolate as bars or blocks.

■ Although a specific item in the Tariff Schedules will embrace subsequently created articles, not known at the time of its original enactment, which fall within its designation, *Davies Turner & Co. v. United States*, 45 CCPA 39, 41, C.A.D. 669 (1957), this new article must essentially resemble the one described in the statute

---

**2.** An identical definition of bar is found in *Webster's New International Dictionary* (1st Ed. 1929), which also describes a block as usually a solid.

according to the criteria established for classification therein. *Hoyt, Shepston & Sciaroni, S. Blondheim & Co. v. United States,* 52 CCPA 101, 104, C.A.D. 865 (1965). The Court further acknowledges that altering the state of an article temporarily, to facilitate transportation without changing the essential nature of the goods, may not control classification. *Arthur J. Humphreys v. United States,* 43 Cust.Ct. 103, C.D. 2112, 177 F.Supp. 259 (1959); *American Bitumuls & Asphalt Co. v. United States,* 45 Cust.Ct. 1, C.D. 2188, 185 F.Supp. 955 (1960). However, the process must not result in the conversion of the product into another commodity with a separate and distinct tariff classification. *Humphreys,* 43 Cust.Ct. at 106, 109, 177 F.Supp. at 261, 263. Chocolate is either classifiable in bars or blocks, or in any other form. Although plaintiff is entitled to enter the chocolate in the form which is the most economical and efficient, once the article fails to satisfy the tariff description for bars or blocks, it cannot be so classified. Plaintiff is not precluded from obtaining preferred duty treatment for this article since it is conceded that plaintiff does import chocolate in bars or blocks in solid form.

It is urged by plaintiff that there was a clear Congressional intent to provide a lower duty for commercial chocolate, which in 1929, was imported "in 10 pound bars or blocks"; thus this language was employed by Congress to easily identify the commercial level chocolate. Plaintiff claims this intent should not be frustrated merely because advances in technology permit chocolate to be transported in liquid form, where the essential characteristics of the chocolate remain unchanged. Of course, if "consistent with the intent of the enacting Congress, the words of the TSUS can be adapted to modern technology." *Kuehne & Nagel, Inc.,* Slip. Op. 86–138 at 9.

The language employed by Congress will ordinarily be regarded as conclusive absent a clearly expressed legislative intention to the contrary, *Consumer Product Safety Comm'n v. GTE Sylvania,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); and the ordinary meaning of these words is presumed to express the legislative purpose. *Richards v. United States,* 369 U.S. 1, 9, 82 S.Ct. 585, 590–91, 7 L.Ed.2d 492 (1962). Resort to legislative history is appropriate when there is ambiguity in the statutory language which would prevent the Court from ascertaining how Congress intended certain merchandise to be classified. *C.J. Tower & Sons v. United States,* 41 CCPA 195, 200, C.A.D. 550 (1954). While the Court is of the opinion that the words in the tariff provisions are not ambiguous, it does note that legislative history may be probative in discerning the common meaning of the words. *Schott Optical Glass,* 67 CCPA at 34, 612 F.2d at 1285.

The distinction between items 156.25 and 156.30 has its genesis in the Tariff Act of 1930. The Senate floor debate involving this original provision reveals one senator's concern to differentiate for tariff purposes between chocolate considered confectionary, ready for immediate consumption and a small quantity of high grade chocolate imported from Holland used to coat expensive candy or chocolate. This latter type of chocolate was imported in 10–pound blocks or cakes measuring about one foot square. 71 Cong.Rec. 5672 (November 16, 1929). The present TSUS items parallel the relevant language in the predecessor provisions first enacted in 1930. Of significance, is that in neither the present Tariff Schedules nor in the original provision, did Congress adopt language classifying chocolate based on its ultimate use. Yet, plaintiff asks the Court to draw that inference.

Further, the *Tariff Classification Study,* Explanatory and Background Materials, Schedule 1, Animal and Vegetable Products, at 163 (1960), makes no reference to commercial shipments versus retail uses of chocolate as the distinguishing criterion between items 156.25 and 156.30. It states that sweetened chocolate, even though it may be considered confectionary, will be classified according to items 156.25 and 156.30, rather than under Schedule 1, Part 10, Subpart C, entitled Confectionary. However, confectionary is defined as ready for consumption, which would seem to con-

flict with plaintiff's argument. Congress did in fact provide a separate classification for chocolate considered confectioners' coatings and other products of similar composition. *See Tariff Classification Study*, Sixth Supplemental Report, at 1 (1963).

 As stipulated by the parties, this method of transporting bulk chocolate has been in use since about 1950. It is noteworthy that in the Tariff Schedules, a total revision of the tariff provisions, enacted 10 years after the advent of this technology, Congress did not alter the language to reflect this method of shipment in liquid form. As plaintiff points out, there is no evidence that Congress specifically considered this question or was apprised of an administrative practice by Customs in classifying this merchandise. Nevertheless, whether or not Congress has acquiesced in the administrative practice, it certainly has not acted to modify the relevant statutory language or change the practice. *Zenith Radio Corp. v. United States*, 437 U.S. 443, 457, 98 S.Ct. 2441, 2448–49, 57 L.Ed.2d 337 (1978). Had Congress intended a dichotomy between commercial importation of chocolate and that imported for retail sale, without regard to mode of entry, it would have been expressed clearly in the statutory language or legislative history. *American Tobacco Co. v. Patterson*, 456 U.S. 63, 72 n. 6, 102 S.Ct. 1534, 1539 n. 6, 71 L.Ed.2d 748 (1982). The court cannot create a statutory distinction which may not have been intended. *Id.* Although no doubt exists that the merchandise in question is of the same essential character as solidified chocolate, the Court cannot ignore the plain meaning of the words used in the statute. The brief legislative comments from 1929 do not amount to a clearly expressed intent contrary to this plain understanding. 456 U.S. at 75, 102 S.Ct. at 1540–41.

## CONCLUSION

The imported chocolate, having been imported in molten form cannot be classified as chocolate in 10 pound bars or blocks. The common meaning of bars and blocks, as discerned from lexicographic sources contemplates a solid material. The difference between classification under items 156.25 and 156.30, does not rest in the essential nature of the product, but in the manner in which the chocolate was imported. The legislative history does not demonstrate a clear intent to classify chocolate according to whether it is used for further manufacturing or for retail consumption. Having failed to establish that the merchandise was incorrectly classified, plaintiff's motion for summary judgment is denied, and defendant's motion for summary judgment is granted. So ordered.